Please be seated. Could the clerk call the next case, please? Case number 313-0662, County of Kankakee, Illinois, Sheraton, Kankakee County, Adelaide, by James Worsha, v. Illinois Fraternal Order of Police Labor Council, Appellant, by Jeffrey Burke Mr. Burke, good morning. One second before you start. I'd like to mention that Justice Holdridge is the third member of this panel. He's not able to be here this morning. He will be listening to all of the tapes and the arguments and will be participating in the discussion and formulation of the decision. Thank you, ma'am. Let me first of all thank the court for taking time out of its busy schedule to hear a little bit more about our case and also I wanted to compliment you on your courthouse, which is lovely. I'm going to start out just with some preliminary information, introduce the parties to you, and I want to refresh your recollection on a little bit of the procedural background of the case, who we are and how we got here today and what the underlying grievance was all about. So first of all, as the clerk indicated, Jeffrey Burke, I represent the Illinois Fraternal Order of Police Labor Council, or Labor Union, and we represent public employees in the state of Illinois. The employer is a joint employer is the County of Kankakee and the Sheriff of Kankakee County. The union represents several bargaining units of employees who are employed by the employer. The one at issue here includes corrections officers employed in the sheriff's office jointly by the County of Kankakee and the Sheriff of Kankakee County. The employee who is affected by the underlying grievance is Nick Breas. Nick was employed as a corrections officer with the county since 2005. He was terminated in 2010. The union filed a grievance protesting his termination. The parties were unable to reach a mutually satisfactory adjustment of the grievance in the earlier grievance steps, and so the matter proceeded to an arbitration hearing. The arbitration was heard. Well, before we got to the arbitration, we picked an arbitrator. Peter Foy, in this case, is his name. It's spelled F-E-U-I-L-L-E, but it's pronounced Foy. Arbitrator Foy was jointly selected by the parties. The collective bargaining agreement, as we've noted in the briefs, has very specific language about the final and binding nature of an arbitration. In fact, it says specifically that the arbitrator's decision is final and binding on all parties involved. And so, frankly, when we had the arbitration hearing over the termination of Nick Breas, under our contract, under the language we have agreed to with the employer, that should have been it. We had an arbitration hearing on June 16th of 2011, at which time the parties had the opportunity to call witnesses, present evidence in support of their respective positions. The parties did that. We closed the hearing with closing arguments, not post-hearing briefs, and we did not get a court reporter for that arbitration. So it's something that, I think, if we had to do one thing over again, that would have been it. But it's too late to do that now, so there is no transcript of what went on at the actual arbitration hearing. In October of 2011, Arbitrator Foy issued the award. In the award, he reinstated the grievance with the lengthy suspension. Notwithstanding the contractual language indicating that arbitration decisions are final and binding on the parties, the employer appealed anyway and went into circuit court raising a series of arguments for why the arbitrator was wrong. The circuit court agreed and vacated the arbitration award. So this appeal followed. What I want to do is highlight a couple of things that I think maybe I could have highlighted a little bit better in the brief, and discuss a recently decided case that came out just in the last five or six weeks or so, August 11th, 2014, in the First District. And then hopefully take any questions that you may have. We really like questions, so if you have something that you need to know, please ask it. Hopefully at this point it's abundantly clear from the parties' briefs or from the case of the Steelworkers Trilogy, the AFSCME decision, the cases that follow that, that the arbitrator gets to decide the case. The exception to that, the only really exception that would be remotely relevant here, is the judicially created exception of public policy. And the cases are very clear that that exception is a narrow one. If it's going to be applied at all, it should be applied only in extremely limited circumstances. It's very fashionable right now for employers to raise, to appeal arbitration awards on the public policy, on public policy grounds. It has become the exception that's eaten the rule. And I like to say, you know, another day, another half a dozen public policies, because you could come up with as many public policies as you want, basically for any termination, any discipline case, you could come up with an alleged public policy, not a real one, but an alleged public policy. Which would justify why that case should be overturned. In this case, the circuit court's first mistake was in buying into the employer's claim that the arbitrator required it to create a new position for Nick. Not to belabor this point, the language of the decision is clear. He allowed it. He said, you may create a position that has access to less sensitive information. We all know the difference between may and shall. Unfortunately, despite really us urging him not to do this, he concluded that the arbitrator required creation of that position. And then, for that reason, said the arbitrator exceeded his authority. It's not grounded in the contract. The court went on to write that the arbitrator had violated these other provisions of the contract. And therefore, the arbitrator exceeded his authority and the award should be vacated. Okay, that was big mistake number one. Because, as we can see from the plain language of the arbitration award, there was no requirement for them to create a position for Nick Brace. He simply said, you may. He gave them an opportunity, if it existed, to put Brace in a different position. The employer said, well, there is no such other position, so okay, fine. Put him back in the one he was in. But he did not require them to do anything that would violate the collective bargaining agreement. His authority to reinstate Brace clearly has the authority to do that, not only under the collective bargaining agreement, but under the parties stipulation that the issue before him was whether or not Brace was terminated for just cause. And if not, what should the remedy be? So he had the authority to hear the case, to reinstate Brace, and determine what the proper remedy would be. Which included offering this to the employer as an option, if they wanted. They decided not to take it. Mr. Burke, as a practical matter, if the arbitrator said that Mr. Brace had to be reinstated, and acknowledged that he had lost the trust and confidence of the sheriff, and that he should be put into a position that required no trust and confidence, why is that not requiring the creation of a new position? Well, if he had done that, if he had said, I'm requiring you to reinstate him, and you have to do it in a position which requires no trust at all. First of all, he didn't do that, but I'm just thinking theoretically. What exactly did he do? He said, he required them to reinstate Brace. You need to reinstate him. If you want, you can put him in a position that has less access to sensitive information. I don't know what position that would be. I suspect he doesn't either, but that was an option that he gave to the employer, because they said that he had lost our trust and confidence, and he wasn't a good employee, and these other things. It does not mandate doing any of that. It's just simply, it was an option. If there is such a position available, to go ahead and you can do that. I'll let you do it. And the employer responded that there is no such position available. So, okay. Then he goes back to the job he had before. His corrections officer, just like everybody else. And after the arbitrator found that he had violated all these things. Yeah, he violated rules, but that doesn't mean that you get fired. I mean, it was within the arbitrator's authority. It was just a lengthy suspension. It was a lengthy suspension. Yeah, months. A very lengthy suspension. Right. You know, the arbitrator, he was the one who acted like a trial court. He heard the witnesses, heard the arguments of the parties, reviewed the evidence firsthand, and concluded that based on his review of the evidence, termination was not appropriate. That is perfectly within his authority to do that. I mean, that's the purpose of the arbitrator, and that's exactly what the case law says. I mean, you can see in the district court's decision, the courts were re-weighing the merits of the evidence, and saying, well, I don't think this guy really deserves to get reinstated. But guess what? That's not the court's role. That's not the court's choice. That's not the court's decision. That's the arbitrator's decision. In fact, that's what the parties bargained for when we negotiated the collective bargaining agreement. When we negotiated the grievance arbitration provisions. The just cause provision. We bargained for the arbitrator's interpretation of just cause. That's what we got. Your opponent argues, obviously, and in the brief, that the trial judge accepted the findings of the arbitrator. Well, I'm not sure he did accept the findings of the arbitrator, per se. He agreed with him in some of it, but he also said the arbitrator dispensed his own brand of industrial justice, which is the old phrase that is thrown around in the cases. So I don't think the trial court agreed with much of what the arbitrator said. Certainly, I don't think he agreed with the arbitrator's decision to impose the suspension as opposed to outright terminate him or sustain the termination. He had fault with the remedy. The trial court? Yeah. He took issue with what the trial court saw as a requirement that he create a new position, which is completely unsupported by the decision. And he seemed to take issue with just the notion of reinstating him at all. That's part of the public policy. I guess that's kind of step two in what I wanted to talk about. Maybe this is a good spot to kind of lead into that. The trial court then concluded that Nick's reinstatement violated two public policies in this case. Another day, another public policy. In this case, they were workplace safety. The state of Illinois has a public policy favoring workplace safety, and the state of Illinois has a policy favoring efficiency of law enforcement. Both of which are laudable goals. Workplace safety, look, we're the union. We're the labor movement. The labor movement owes its existence largely because of the unsafe workplace. So we're all about and all in favor of workplace safety. And efficiency is a great thing. We all want to be more efficient at work. But that doesn't necessarily mean that there's a public policy that requires people who are inefficient or do things that are unsafe that they have to be terminated and that it's against the law to reinstate them. Thank you. It may be unsafe and inefficient to walk around with your shoes untied. It may be unsafe and inefficient to drink hot coffee at work. But either of those things requires you to be fired and prevent you from being reinstated if you are. So when you take these principles that sound nice and are good ideas, it doesn't necessarily mean that there's an overriding public policy here. Last thing I want to do really quickly is to turn the course of attention to the Village of Pozen versus the Illinois Fraternal Order of Police Labor Council decided by the 1st District August 11, 2014. That's 2014 WL3907975. This case involved a police officer from Village of Pozen who was terminated for alleged theft. Arbitrators sustained him. It went up to the Court of Appeals. The Court of Appeals rejected that employer's public policy arguments. And you can see how these things can very quickly grow heads. You can't chop them off faster than they grow new ones. The Court of Appeals rejected that public policy argument. Specifically noted in the decision, this case illustrates just how hard it is to get an arbitration warrant vacated. Rejected the litany of the employer's other arguments and confirmed the arbitration warrant, which is what we're asking the Court to do here, to reverse the circuit court and confirm the arbitration warrant. You know, just taking your argument that he didn't require the new position, that doesn't exist anyway, evidently. I mean, nobody even is suggesting there's such a position. The employer said there is not one, and we don't have any evidence that there is. Or you don't have access to sensitive information. So that, and even accepting your argument that it wasn't required, it was just a suggestion, isn't that sort of just inconsistent with the arbitrator's other findings? To say that, well, try to find some place, I'm not requiring it, but try to find some place where the person does have sensitive information access, you know, in the context of a sheriff's department at the jail. I mean, is that based on the other findings the arbitrator made? I don't, which is, I mean, that sort of glares out at you, doesn't it? Not really. This is not the first arbitration warrant that I've even seen where the arbitrator gave the employer an option to not necessarily put, you know, gave the employer an option to put the employee back in a different position as an option. Well, you know, we've seen those kinds of things, and usually in a different position is maybe not on the road, something else, or maybe not, you know, you know. But this isn't like that. This isn't like the things that you see, usually they're talking about stuff, positions within the department. This is, have you ever seen something like this before? I don't think it's any different from, yeah, from other cases where I've seen arbitrators reinstate employees to a bargaining unit, a job that's not even in the bargaining unit. That was in a different state, actually. So, yeah. In the context of somebody who worked for the sheriff's department? No, no, not for the sheriff's department. Of course not, you know. We're dealing in this kind of case. Well, and I'll tell you, we have had quite a bit of debate over the reality of how much access to sensitive information your average corrections officer has. Other than public records, I would say not very much. I mean, I think it wasn't at the time of the texting incident. Yeah, this is the texting one, yes. The person was already on a 25-day suspension. Yes. That would have been, and in the agreement they talk about 30 days? That was another issue. The sheriff has the authority to suspend people for 30 days for one year. It's just quite clear the sheriff can do it. That does not bind the arbitrator. So, unless there's anything else? No. Thank you. I'll see you in about 15 minutes. Okay. Mr. Borcia, good morning. Good morning. Thank you, Your Honor. I'm Tim Borcia. I represent the county and the sheriff in this case. The trial court here properly vacated the arbitrator's award on two separate grounds. Council focused on the public policy grounds, but the first ground you have to look at is did the arbitrator's award flow from the contract, flow from the agreement? Arbitrators are not free to just dispense whatever they feel is right or appropriate like a trial court would be in a certain situation. They have to follow the agreement, and here the arbitrator did not do that. The arbitrator, in essence, did what he felt was right, but that is not supportable by the agreement. The first reason is, which Your Honors have already talked about this morning, is the award suggests, because of the violations by Mr. Brace, that the employee, what they say, may reinstate the agreement to a corrections office position in which the agreement will not have access to any sensitive or confidential information. There is no such position. It is undisputed by both sides that that position didn't exist. So for the arbitrator to suggest that would be a solution here is nonsensical, and what the courts say is zany because it doesn't flow from the agreement. There is no position in the agreement calling for that, and there is no provision that would allow the sheriff to simply create a new position out of cloth just because the arbitrator felt Mr. Brace deserved special treatment is not yet terminated. What do you do with the word may? May is, the suggestion is, that the arbitrator understood, given these grievous violations and the total lack of confidence the sheriff would have in this officer, that there had to be a circumstance where Mr. Brace was not just allowed access, as he would be for an officer, to the information you would get, information about pending investigations of crimes. So what the suggestion is, put him somewhere else, that you don't have to worry about this, but the problem is that doesn't exist. So that's the issue is, the arbitrator obviously understood, given his findings that the trial court accepted, that Mr. Brace had committed very serious violations and needed to be punished. But what he didn't understand is, this position that he envisioned didn't exist. But isn't that, you know, the argument from your opponent that it wasn't required, isn't that, as Justice Dade suggests, isn't that, when you say may, isn't that, that's not mandatory? But it's not made gratuitously. I mean, you have to take it in context and say, why did he make the statement? The statement was made because he understood, and he believed at that point, obviously, you wouldn't make the statement unless you believed it. He believed the position existed. And otherwise, you wouldn't make the statement. And the position doesn't exist. Well, what was the whole sentence again? Well, the sentence is, Your Honor, it says, as a result, the employer may reinstate the agreement to a corrections office position in which the agreement will not have access to any sensitive or confidential information. So he obviously believed, wrongly, that that position existed. It doesn't. And there was no evidence that it did. So then the order is that he's to be reinstated? Well, but that's not what the arbitrator ordered. The arbitrator gave a finding, really, an instruction that didn't exist. The other problem here is the 90 days. I mean, the agreement limits suspensions to 30 days. And the arbitrator obviously felt that wasn't enough. And it's 30 days for a one-year period. Mr. Brace was already on a suspension for 25 days at the time of the incident, which Your Honor addressed earlier. There was no provision in the agreement for a 90-day suspension. It's not provided for in the agreement. So what you have here is an arbitrator who is going outside of the agreement, who is making his own decisions on things that don't flow from the agreement. And that's the perfect circumstance in which the trial court found this award does not flow from the agreement. Mr. Work says that it's only the sheriff who's in the county who's restricted to the 30 days, that the arbitrator is not. But the problem, Judge, is that's the agreement. It's not just that the agreement provides for the 30 days. The arbitrator is constrained by the agreement. The arbitrator can't just start making things up that aren't in the agreement. And that's what happened here. He went outside of the agreement because, obviously, he felt these were very serious violations. And that's not what the arbitrator should be doing. He should be following the agreement. The agreement provided for a certain protocol for discipline. Oral reprimand, written reprimand, then suspension, then discharge. And that's exactly what the sheriff did here. The sheriff followed those progressions. Mr. Brace was on a suspension at the time of these violations. The next step for violation was a discharge. That's what the agreement provided for. And the arbitrator here went outside of the agreement and, again, cut his own brand of justice. The public policy issues that counsel had addressed with you, there's two separate public policies at play here. One is the protection of law enforcement. Here, the findings are very serious as to what Mr. Brace did. And the other one is the safety of the employees in the workplace, the safety of the employees in the department, corrections officers, police officers who are investigating crimes. Mr. Brace promised to give information to a known felon if he was being under investigation. That's the perfect example of why you can't trust this man. And public policy steps in and says, we're not going to allow this to take place. We have to have exceptions. And the exceptions here are mandatory. In terms of public policy exists, well-recognized public policy exceptions that the judge cited and have been recognized in the case law. This is not something he just made up. The public policies of promotion of law enforcement and safety of employees in the workplace.  the trial court here accepted the arbitrator's findings and that's the difference in the case that was cited to you by counsel, the recent case and the Postman case. In that case, the arbitrator found that there were no violations. There was an issue there involving theft. And the arbitrator found that the employee there didn't steal these things. So, but here we have a difference. Here, the trial court actually accepted the arbitrator's findings. And he properly ruled two things. One is the arbitrator's result based on those findings didn't flow from the agreement, which I think is very clear in terms of what the agreement says. And what the arbitrator says, they don't match up. But the second thing is, based on those findings, public policy, which the courts are required to enforce, public policy requires us to vacate this award because this man, as your Honor said earlier, this employee had lost the confidence of the sheriff. The sheriff couldn't put his other fellow corrections officers at work, at risk. He couldn't put the other police officers at risk in the field with someone who has been known to be communicating with a known felon directly against the rules. When he had been in the department for five years, he should have very well known better and had a very checkered past in terms of disciplinary issues. Had been suspended or disciplined five times and three years before this. So to put this man back in the position where he wouldn't have to have access to sensitive and confidential information, that would jeopardize the ability of law enforcement to investigate crimes. They would also put the other corrections officers and police officers at risk for their own safety. Were any of the prior offenses this kind of thing that involved a breach of trust? Well, one of them was Mr. Brayson brought his cell phone into the jail, which was a very strict and prohibitive practice. And it could compromise the confidentiality. It could compromise. So that is one thing he did. It was not a violation to the felon, but it did compromise. It was a very serious violation. He was recommended for that. And so, yes, there were prior violations, but the point here, Judge, is that this situation where the arbitrator himself, if you look at his findings, he said things like this was an egregious violation. There has to be serious punishment. These are findings that he made based upon his... And the other thing was that Mr. Brayson was not credible at the hearing. I mean, basically what the arbitrator found was what he was testifying to wasn't true in some things. So if you can't trust Mr. Brayson to testify honestly in a proceeding, under oath, how can you trust this man to be a corrections officer and have access to confidential information when you can't believe what he's saying to you and you can't trust what he's doing? And that gets to the essence of the public policy here, which is the court has to step in, and the trial court properly did and said, you know, this award, where you're putting this man back into the situation where he can violate the trust again, where he can compromise the safety of other employees, that's not proper under the case law. The case law has these very well-recognized exceptions. And I agree with counsel. The ability to make arbitration awards is properly narrow, but this case is a perfect example of why you have exceptions to the rule. And the trial court properly, based on the arbitrator's own findings here, properly determined that number one, the arbitrator did not file the agreement based upon what we discussed earlier, and number two, public policy prohibits us from enforcing this award given the egregious circumstances here. Any other questions? Thank you. Thank you for your time. Mr. Burke, any rebuttal? Briefly. Before you start, could you cite your authority for the 90 days being okay under the collective bargaining agreement? I just was going to read that to you. It's in Article 12 of the contract, which is page 22 of the collective bargaining agreement, A44, if you want to look at it in the appendix. Section 1, discipline and discharge, as follows, the authority of the sheriff to suspend shall be limited to an aggregate of not more than 30 days in any 12-month period. It does not limit the arbitrator at all. In fact, the stipulated issue at the arbitration was what shall the remedy be. That's what the parties agreed to. That's routinely what the issue is in a disciplined case, and so there is nothing in the contract that limits the arbitrator's ability to impose a 90-day suspension, a one-year suspension. It's up to him or her. We have not bargained that away, for sure. I wanted to... So when the arbitrator is required to fashion decisions that flow from the agreement, they can do anything they want without any limitation? I'm not going to say without any limitation. I'm sure there is some limitation, but... What are the limitations, then, under your theory? Well, the arbitrator has, because of their knowledge of the workplace, their knowledge of collective bargaining agreements, they have a particular... There's a great amount of difference shown in their decisions, and in particular, when they're fashioning remedies. So they're particularly insulated in... Right where we're talking about right now, which is what shall the remedy be. That's up to them. Could the arbitrator suspend for a year? Yes. They can reinstate without back pay. Suspend for two years? Yes. The arbitrator can do anything from deny the grievance completely to sustain it completely, give you full back pay, and anything in between. And what is the meaning of the essence of the collective bargaining agreement? Well, any grievance has to be rooted somewhere in the language of the collective bargaining agreement. In this case, it's the just cause provision. It's the just cause provision for the plaintiff, Nick Breas. And the arbitrator answered that question, no, they didn't. I will allow them to reinstate him to another position if one exists, and we don't agree that the arbitrator thought there is one. I don't think he knew whether there was one or not. He just simply gave that option to the employer, and I don't think he was doing Nick Breas a favor. He was doing the employer a favor. He wasn't giving Nick special treatment. He was giving the employer special treatment to the employer. I'm sorry, you still haven't answered. Oh, I'm sorry. How the 90 days is within the essence of the collective bargaining agreement. I don't understand that. Well, the arbitrator is not limited by the collective bargaining agreement. He can suspend for, there is no language in here that limits that says the arbitrator shall not suspend an employee for 90 days. There's no language that says an employee may not be suspended for more than 30 days. That's not what it says. So what are the restrictions on the arbitrator, or are you saying there are none? I suppose there are some restrictions, but certainly nothing that would be at issue here. I mean, the restrictions are that there has to be language in the contract that is from which the arbitration award derives. And in this case, it's the just cause provision. But there is no limit on the suspension that the arbitrator could impose. Not in this contract, and absence, even if you take Article 12 out of the section that I read about limiting the sheriff's ability, if that wasn't in there, there wouldn't be one. Following up on Justice's question, I guess I'm confused, because if you're fashioning, you know, the agreement was between the sheriff, the county, and the employees. That was the agreement. And the union, right. But the agreement wasn't, the arbitrator wasn't a party to this agreement. So what flows from the agreement was this agreement between the parties, the union and the employees, and, you know, the employer. So now the arbitrator is supposed to do something that flows from the agreement. Here is the agreement that says this. And I have difficulty understanding your argument then. Well, the arbitrator could do something that flows from the agreement, and you're concentrating on just one, so it could be freewheeling. I mean, this guy has all kinds of authority to do anything. You know, I guess anything creative. Well, doesn't it have to be, when you're allowing, when you're coming to a decision, and there is, you know, like a process of different kinds of remedies or positions after certain findings are made, doesn't it have to flow from that agreement? I mean, I don't think the arbitrator can make up stuff. And the agreement talks about a limitation of 30 days, albeit it says the sheriff can't because that's who the agreement is with. But how do you get from 30 to 90? You say the appropriate remedy in this case is a 90-day suspension. And that's a remedy, because the arbitrator is deciding the appropriate remedy given the violation in this case, and that's a remedy that the sheriff has granted. Absolutely. Absolutely. So that would be the appropriate remedy from the arbitrator's standpoint, something that the employer could not have done. Yes, right. And it's still within the essence of the collective bargaining agreement. The collective bargaining agreement does not in any way limit the arbitrator's remedial authority. The grievance is rooted in the collective bargaining agreement to approve arbitrator's decisions outside of the agreement, beyond the agreement itself. Well, I don't agree that anything about this award was outside of the agreement. There are cases that the parties have cited, too, like the Steelworkers Trilogy that discuss the arbitrator's authority on remedies,  written about it, actually. So there is a lot of discussion about the arbitrator's authority, and I can tell you the arbitrator, particularly with remedies, has a lot of discretion. Let me ask this question in a different way. Are there cases out there that have approved the arbitrator's, and maybe this is a stupid question, but where they have approved the arbitrator's decision to grant a remedy that the employer could not have even considered? Not that I'm aware of. I don't recall seeing that. I wanted to note a couple things briefly. One of them is, and this is in one of the cases that was cited by the parties, the circuit court did not need to vacate the entire arbitration award because he didn't like that one portion about reinstating brass to a non-sensitive position. He could have vacated just that portion. And we know the case law says, including the Village Opposing Decision, the recent one, that says arbitration awards must be upheld whenever possible. He could have just vacated that one line if he thought that violated and confirmed the rest of it. On the employer's argument that the contract provides a lockstep progression of discipline, it doesn't. It just provides these are the four options. Order reprimand, written suspension, or discharge, but it doesn't go one, two, three, four. And in fact, as we noted in the brief, Nick Brayes' particular case illustrates that there was no lockstep because he had served several suspensions. So discharge was not necessarily the only thing. The texts that were discussed briefly, they were, Nick just fortuitously happened to know who this guy is. This Dave Caban was the guy who he was texting with because Nick's sister had gone on the prom with him back in, I forget the year, years ago. The photograph is part of the record. He was 13 or something. Yeah, when he was 13 or something and so, you know, kind of knew who the guy was and, you know, I suspect Mr. Caban had his own agenda in suddenly popping up and contacting, you know, Nick via text like that out of the blue. So we don't, you know, their characterization is he's sharing information with a known felon. I, you know, I think the reality is, I think we, common sense is that this was really quite different. It was an offhand comment to somebody who he hardly knew. And Mr. Caban  for sure. And, maybe the last thing, the, apparently every witness whose testimony is not credited at a hearing needs to be fired from their job and cannot be reinstated. I guess that's another public policy that if you're not credited at a hearing, you can't work anymore because that's what they're telling you. Well, Nick was credited. He was not, his testimony was not credited by the arbitrator and therefore, you know, how could you reinstate him if he's not credited? But credibility determinations are made all the time. In fact, the court here is going to make some credibility determinations between the two parties who's got the more credible argument. It's just part and parcel of the hearing process. Well, that's not credibility. I understand. It's not the exact same, but all I'm saying is it's a normal part of the hearing process. Unless there's any further questions. Thank you for your time. We do appreciate it. Thank you. Thank you. We thank you both for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. Thank you. The court will now stand in recess for apparent change. Thank you. Thank you. The court is now  Thank you.